# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00380-CV

**William Walter Pyle, Jr., Appellant**

**v.**

**Harry Holmes, II, Independent Executor of the Estate of
Thomas J. Holmes, Sr., Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. 27,298, HONORABLE DON B. MORGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant William Walter Pyle, Jr. filed suit against appellee Harry Holmes, II, as independent executor of the estate of Thomas J. Holmes, Sr., seeking to establish Pyle's ownership of three tracts of land in Milam County. Holmes moved for summary judgment, and the trial court granted the motion, declaring Holmes the owner and awarding him attorney's fees. In three issues, Pyle contends that Holmes did not establish (i) the superiority of his title, (ii) that collateral estoppel should bar Pyle's suit, or (iii) that Pyle's suit was an impermissible collateral attack. We affirm the trial court's judgment.

### Factual Background

Pyle owned an undivided 64 percent interest in a 1,419-acre tract of land and a 100 percent interest in a 70-acre tract and a 46-acre tract (collectively, "the properties"). The First

National Bank in Cameron sued Pyle on several unpaid loans and obtained a $164,465 judgment against him on September 18, 1991. In deeds dated September 4 and 17, 1991, Pyle transferred his interest in the properties to Pyco Joint Venture, a partnership in which Pyle and his three children were the sole partners.[1] The Bank sued again, alleging that the transfer was fraudulent and thus void ("the Bank's suit"). In October 1997, the district court set aside the transfer as to the Bank, and in April 2000 this Court affirmed the district court's decision. *See Pyle v. First Nat'l Bank*, No. 03-98-00008-CV, 2000 Tex. App. LEXIS 2559 (Austin Apr. 20, 2000, no pet.) (not designated for publication).

In January 1998, Pyle filed for bankruptcy on behalf of Pyco, and in March 1998 Pyco was placed under Chapter 11 bankruptcy protection. In its bankruptcy filings, Pyco claimed to own the properties. A trustee was appointed to manage Pyco's affairs, and in July 1998 the trustee applied to sell the properties to Holmes. In September 1998, the bankruptcy court approved the application, and the properties were sold to Holmes free and clear of all liens, claims, or other interests. The court order approving the sale recites that the Bank, which claimed an interest in the property under the judgment that was on appeal before this Court, consented to the sale, requesting that its liens and interest in the properties be paid to it at closing. The order further recites that any liens or other interests held by the Bank would attach to the sale proceeds, and that the properties would be sold free and clear of any interest held by the Bank. The order states, "To the extent any liens, encumbrances or other interests exist in the property to be sold, the sale shall not affect such substantive rights or interests of any party, if any, and the same shall attach to the proceeds of sale . . . in the same priority as on the property sold." The trustee's motions for approval and for an

---

[1] The deeds recite that Pyle sold his interests for ten dollars for each property.

extension of time to finalize the sale state that Pyle and his attorney were both served with notice of the motions, and the bankruptcy court found in its order approving the sale that notice of the hearing on the trustee's motion for approval was given to all parties. Pyle did not file any objections to the sale in the bankruptcy court.

In December 2000, Pyle filed the subject suit, alleging that he was the owner of the properties. Pyle argued that the district court's 1997 order voiding the transfer to Pyco as fraudulent had the effect of returning ownership of the properties to him, and that Pyco's trustee therefore sold properties that did not belong to Pyco.[2] Holmes removed the cause to the bankruptcy court, but the court remanded it back to the district court after finding that the dispute would not affect Pyco's bankruptcy proceeding and that Pyle asserted only state causes of action. As part of the remand order, the bankruptcy court prepared detailed findings of fact and conclusions of law that: Pyle had notice of the sale order; the sale "was clearly authorized and proper under applicable bankruptcy law"; and even if the properties had been sold without authority, the "decision is now indisputably final and cannot be challenged at this late date. [Pyle] had the opportunity to be heard on the trustee's motion to sell, and could have appealed the sale order, but chose not to." The bankruptcy court concluded that Pyle "cannot now attack [the sale] collaterally—even on jurisdictional grounds," and that *res judicata* precludes Pyle's attack.

Holmes moved for summary judgment, asserting that the bankruptcy court was correct in its analysis, that the sale was final, not subject to collateral attack, and protected by the

---

[2] In his pleadings, Pyle asserts that because his attempted transfer to Pyco was invalid, Pyco "only owned thirty-six percent (36%) of the property," which we take to mean that before the transfer Pyco owned 36 percent of the 1,419-acre tract and Pyle owned the other 64 percent.

3

principles of *res judicata*, and that the 1997 judgment only affected the transfer as to the Bank's claims. The trial court granted summary judgment in favor of Holmes, and this appeal followed.

**Standard of Review**

A motion for summary judgment is properly granted only if the movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's causes of action or plead and prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom*, 26 S.W.3d at 530. We make every reasonable inference, resolve all doubts, and view the evidence in the light most favorable to the non-movant. *Centeq Realty*, 899 S.W.2d at 197; *Holmstrom*, 26 S.W.3d at 530.

A bankruptcy trustee may sell property of the bankruptcy estate after notice and a hearing. 11 U.S.C.A. § 363(b)(1) (West Supp. 2004). In a hearing on a motion for approval to sell, the party asserting an interest in property must raise an issue as to the validity, priority, or extent of any such interest. *Id*. § 363(o) (West 1993). Even if a buyer in good faith knows an authorization to sell is on appeal, the validity of the sale is not affected by a later reversal or modification of a sale order. *Id*. § 363(m) (West 1993). An attack on an order approving a sale will be dismissed as moot if the attacking party does not obtain a stay of the sale and the property is sold while the attack is pending. *See id*.; *Ginther v. Ginther Trusts* (*In re Ginther Trusts*), 238 F.3d 686, 688-89 (5th Cir. 2001); *Gilchrist v. Westcott* (*In re Gilchrist*), 891 F.2d 559, 561 (5th Cir. 1990).

4

**Discussion**

On appeal, Pyle contends that (1) Holmes did not show that his claim of title was superior to Pyle's, (2) fact questions existed as to whether the suit was barred by collateral estoppel, and (3) principles of *res judicata* did not apply. Pyle argues that the judgment in the Bank's suit voided the transfer to Pyco and resulted in Pyle's continuing ownership of the property.

A fraudulent transfer is not void as to all parties and does not, once found to be fraudulent, return ownership of the property to the fraudulent grantor; instead, the transfer is valid as between the grantor and grantee, and only the defrauded creditor may act against the property to satisfy the debt owed by the grantor. *Stevens v. Cobern*, 213 S.W. 925, 926 (Tex. 1919); *Hall v. Edwards*, 222 S.W. 167, 169-70 (Tex. Comm'n App. 1920, judgm't approved). "A creditor's judgment subjecting property fraudulently conveyed by his debtor to the payment of his debt does not have the effect of reinvesting title in the fraudulent vendor." *John Hancock Mut. Life Ins. Co. v. Morse*, 124 S.W.2d 330, 333 (Tex. 1939); *see Stevens*, 213 S.W. at 926; *Hall*, 222 S.W. at 169-70.

Likewise, the judgment entered in the Bank's suit against Pyle, which stated that the transfer was "set aside and [was] null and void as to" the Bank, did not return the property to Pyle as if the transfer had never occurred. *Morse*, 124 S.W.2d at 333. Instead, the judgment gave the Bank the right to proceed against the properties to satisfy its judgment. *See Stevens*, 213 S.W. at 926; *Pyle*, 2000 Tex. App. LEXIS 2559, at *14 ("[The district court's judgment] did not, however, attempt to award the land to the Bank; it simply returned the land to *the status of an asset* of Mr. Pyle. Merely setting aside the transfer did not satisfy the Bank's claim.") (emphasis added). The Bank opted not to have the properties sold on its urging, but instead approved the trustee's sale with

5

the caveat that it would recover its judgment from the proceeds of the sale. The transfer to Pyco being legally valid, the sale by Pyco's trustee to Holmes was valid.[3] Holmes established as a matter of law that his title was superior to Pyle's, who retained no ownership rights in the property after he fraudulently transferred the property to Pyco.

## Conclusion

Having held that Holmes established the superiority of his title to the property as a matter of law, we need not address Pyle's other issues. We therefore affirm the trial court's judgment in favor of Holmes.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: July 1, 2004

_____

[3] Pyle also argues that Holmes did not establish his right to judgment as a matter of law because the order approving the trustee's sale was not "regular on its face," citing to *Clark v. Barr*, 239 S.W.2d 114, 115-16 (Tex. Civ. App.—Fort Worth 1951, no writ) (holding collateral attack on order entered in probate proceeding was improper because will had been fully probated and probate judgment "appeared regular on its face"). Pyle argues that the facial irregularity is a lack of evidence showing that an adversary hearing was held before the trustee's sale was approved, citing to *Lyons v. Lyons* (*In re Lyons*), 995 F.2d 923 (9th Cir. 1993). However, *Lyons* involved a sale under section 363(h) of the bankruptcy code, *id.* at 924, which governs when a trustee may sell "both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety." 11 U.S.C.A. § 363(h) (West 1993). Because Pyle transferred his property interest to Pyco, Pyco owned one hundred percent of the properties and there were no co-owner's interests that would have required an adversary hearing.

6